```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                CIVIL NO. 21-112(DSD/JFD)
```

Ursuline Togbah,

        Plaintiff,

v.                                                       **ORDER**

Alejandro Mayorkas, Secretary of
Homeland Security; Tracy Renaud,
Senior Official Performing the
Duties of the Director of U.S.
Citizenship and Immigration
Services; Leslie Tritten,
Minneapolis Field Office
Director of U.S. Citizenship
and Immigration Services,

        Defendants.

This matter is before the court upon the parties' cross motions for summary judgment. Based on a review of the file, record, and proceedings herein, and for the following reasons, plaintiff Ursuline Togbah's motion is denied and defendants' motion is granted.

**BACKGROUND**

This immigration dispute arises out of the United States government's denial of plaintiff's application to adjust her immigration status under the Liberian Refugee Immigration Fairness

Act (LRIF or Act).[1]  Plaintiff, a citizen of Liberia, arrived in the United States on March 9, 2018, on a B1 visa, which allows her to remain in the country temporarily.[2]  Admin. R., ECF No. 9, at 28.  On June 17, 2018, plaintiff married Joseph Togbah, also a Liberian national.  Id. at 34, 53.  Mr. Togbah came to the United States as a refugee on August 20, 1998, and he became a lawful permanent resident on August 1, 2008.  Id. at 53.  He is currently an applicant for U.S. citizenship.

In 2019, Congress enacted the National Defense Authorization Act for Fiscal Year 2020 (NDAA), Pub. Law 116-92, § 7611, 133 Stat. 2,309, which included LRIF.  LRIF provides an avenue through which certain Liberian nationals may seek adjusted immigration status.  LRIF specifically allows Liberian nationals who have been continuously present in the United States since November 20, 2014, through the date of their application, to apply for lawful permanent residence.  Id. § 7611(c)(1)(A).  Eligible applicants must do so "not later than 1 year after the date of enactment."

---

[1] The named defendants are Pete Gaynor, or successor, Acting Secretary of Homeland Security; Ken Cuccinelli, or successor, Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services; Leslie Tritten or successor, Minneapolis Field Office Director of U.S. Citizenship and Immigration Services.  Because they are all government actors, the court will refer to the collectively as "the government" unless a finer distinction is required.

[2] Plaintiff's name at the time was Ursuline Chea.  Admin. R., ECF No. 9, at 27.

Id. § 7611(b)(1)(A).  LRIF further provides that "the spouse, child, or unmarried son or daughter" of an applicant eligible under § 7611(c)(1)(A) also may apply for lawful permanent residence. Id. § 7611(c)(1)(B).

On February 24, 2020, plaintiff filed a Form I-485, Application to Register or Adjust Status, with the U.S. Citizenship and Immigration Service (USCIS).  Admin. R. at 17-46.  She indicated that she was a "principal" rather than "derivative" applicant.  Id. at 29.  The USIC requested additional information because plaintiff – who, in USCIS's view was not a principal applicant given that she had not been in the United States since 2014 - had not submitted evidence that her husband was an applicant under LFIR.[3]  Id. at 10-11.  In response, plaintiff asserted that she is independently eligible for relief under the LFIR as "the spouse of a Liberian national who satisfied the continual presence requirement."  Id. at 12-14.  She declined to submit any further evidence in support of her application.

On December 15, 2020, the USCIS denied plaintiff's application, explaining that she failed to provide evidence that she is the "spouse ... of a qualifying Liberian national principal applicant."  Id. at 2.  The USCIS further explained that because Mr. Togbah "did not adjust to Lawful Permanent Resident (LPR) under

---

[3] There is no dispute that Mr. Togbah has not filed for lawful permanent resident status under LFIR.

3

the provisions of LRIF ... [he] cannot be considered a Liberian national principal applicant under the provisions of LFIR." Id. at 3.

On January 14, 2021, plaintiff commenced this action seeking declaratory relief under the Administrative Procedures Act, 5 U.S.C. §§ 704, 706(2)(A), and 28 U.S.C. § 1361 (APA). She specifically requests a judicial declaration that the government improperly interpreted the LFIR in denying her relief and an order compelling USCIS to reopen her I-485 application and adjust her status under the LFIR. Both parties now move for summary judgment based on the administrative record.

## DISCUSSION

### I. Standard of Review

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The scope of such review is limited, however. The court may "decide relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The court's review is limited to the record before the agency. Sierra Club v. Davies, 955 F.2d 1188, 1192 (8th Cir. 1992).

4

"When reviewing an agency's construction of a statute, the court first considers whether the intent of Congress is clear; if so, the court's inquiry is over, 'for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Friends of Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1121 (8th Cir. 1999) (quoting Chevron USA, Inc. v. Nat. Resources Defense Council, 467 U.S. 837, 842-43 (1984)). "If the statute is silent or ambiguous on the question at issue, the court considers whether the agency interpretation 'is based on a permissible construction of the statute.'" Id. (quoting Chevron, 467 U.S. at 843).

In the event of ambiguity, the level of deference owed to an agency's determination depends on the nature of the underlying statute. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Chevron, 467 U.S. at 843-44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. If, on the other hand, the agency is not exercising its formal rule-making authority, an agency's interpretation of a statute is entitled to some deference given its "specialized experience." Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944). In such cases, the court determines whether "the agency's position constitutes a reasonable

5

conclusion as to the proper construction of the statute, even if [the court] might not have adopted that construction without the benefit of the agency's analysis." Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1366 (Fed. Cir. 2005).

**II.   LRIF Interpretation**

This appears to be the first case involving interpretation of LRIF. The canons of statutory interpretation guide the court's analysis. Statutory interpretation begins with the Act's "plain language." United States v. Cacioppo, 460 F.3d 1012, 1016 (8th Cir. 2006). "Where the language is plain, [the court] need inquire no further." Id. In other words, if the statutory text is unambiguous, then the court need not consider the agency's interpretation or the statute's legislative history. The court finds that the Act's text unambiguously supports the government's position.

Plaintiff argues that the LRIF creates two independent avenues to become a lawful permanent resident: (1) one for Liberians who have been continuously present in the United States since November 2014; and (2) another for the spouses and children of those Liberians.[4] Plaintiff roots this argument in the Act's disjunctive language:

---

[4] In so arguing, plaintiff disputes that there is a derivative class of applicants under LRIF and maintains that she is a principal applicant under § 7611(c)(1)(B).

6

> The benefits provided under [the LRIF] shall apply to any alien who —
>
> (A)(i) is a national of Liberia; and
>
> (ii) has been continuously present in the United States during the period beginning on November 20, 2014, and ending on the date on which the alien submits an application under subsection (b); <u>or</u>
>
> (B) is the spouse, child, or unmarried son or daughter of an alien described in subparagraph (A).

Pub. Law 116-92, § 7611(c)(1) (emphasis added). Based on this interpretation, plaintiff argues that she is independently eligible for relief under LRIF even though her husband has not applied for relief under the Act, because he has been continually present in the United States since November 20, 2014.

Plaintiff's argument, however, ignores a key portion of the Act's plain language. To be eligible for relief under subparagraph (A), LRIF requires that the applicant be a Liberian national who "has been continuously present in the United States during the period beginning November 20, 2014 <u>and ending on the date on which the alien submits an application under subsection (b)</u>." Id. § 7611(c)(1)(A) (emphasis added). Applicants under subsection (B), as plaintiff is here, must be "the spouse, child, or unmarried son or daughter of an alien <u>described in subparagraph (A)</u>." Id. § 7611(c)(1)(B) (emphasis added). Thus, for plaintiff to be eligible under subparagraph (B), her husband must have been continuously present in the United States from November 20, 2014,

7

through the date of his LRIF application. In other words, Mr. Togbah must have applied for relief under the LRIF to qualify as "an alien described in subparagraph (A)." Contrary to plaintiff's position, it is not enough for Mr. Togbah to have been present in the United States since November 20, 2014, he must also have filed an application for relief under LFIR. There is no dispute that Mr. Togbah has not done so. As such, Mr. Togbah is not an alien "described in subparagraph (A)" and plaintiff therefore is ineligible for relief under subparagraph (B).

Even if LRIF were somehow ambiguous in this regard, the USCIS policy manual, which is entitled to Skidmore deference, makes clear that spouses of eligible applicants under subparagraph (A) must file a "derivative" application "[t]ogether with" or "after" the principal applicant files an "LRIF-based adjustment application." USCIS Policy Manual, Ch. 5 § 4. This interpretation reasonably tracks LRIF's language. See Friends of Boundary Waters Wilderness, 437 F.3d at 823-24 (holding that an agency's "reasonable interpretation must be upheld"). As noted, there is no dispute that Mr. Togbah has not filed for relief under LRIF, which renders plaintiff's application under subparagraph (B) untenable.[5]

---

[5] The court's determination, of course, does not preclude plaintiff from seeking lawful permanent resident status through other means.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERERD** that:

1. Plaintiff's motion for summary judgment [ECF No. 10] is denied;

2. Defendants' motion for summary judgment [ECF No. 14] is granted; and

3. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 4, 2021

                                        s/David S. Doty  
                                        David S. Doty, Judge  
                                        United States District Court